IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| TODD ALLEN RUSSELL, | ) | |
|---|---|---|
| | ) | Criminal No.: 06-132-N-EJL |
| Petitioner, | ) | Civil No.: 10-00554-N-EJL |
| | ) | |
| VS. | ) | **MEMORANDUM ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Pending before the Court is Defendant Todd Russell's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Dkt. 1 in civil case). The Court reviewed the pleadings and found there were contested matters that require an evidentiary hearing in this case. The Court issued an order for a limited evidentiary hearing in 2013. Russell requested the hearing date be moved to allow him to participate in certain programing. The Court rescheduled the hearing for May 27, 2014. At the hearing seven witnesses were called to testify. The parties were directed to file closing arguments in writing. The parties requested the due date for the arguments be extended to allow a transcript to be prepared. Closing argument briefs were filed. The Court has now reviewed the complete record and finds the § 2255 motion should be denied.

## Factual Background

Defendant Todd Russell exercised his Constitutional right to a jury trial. At trial, the Defendant was represented by retained counsel Mr. Douglas Phelps. The jury convicted the Defendant of conspiracy to possess methamphetamine and possession of methamphetamine with intent to deliver. The Court sentenced the Defendant as a career offender to the mandatory minimum sentence of 360 months on Count 1 and 240 months to run concurrent on Count 2, 5 years supervised release on Count 1 and 3 years on Count 2 to run concurrent, $4,000 fine and a $200 special assessment. Two co-defendants pled guilty to other charges in this case.

The Court appointed new counsel to represent Defendant on appeal as Mr. Russell was determined to be indigent. Mr. Mark Moorer was appointed to represent Russell. On appeal, the convictions and sentence were affirmed. The Ninth Circuit declined to reach Mr. Russell's claim of ineffective assistance of counsel in 2009. The Ninth Circuit noted:

> Russell contends that he received ineffective assistance of counsel at trial. We decline to review this claim on direct appeal. The record is not sufficiently developed to permit review and determination of the issue, and Russell was not obviously denied his Sixth Amendment right to counsel. *See United States v. McKenna*, 327 F.3d 830, 845 (9th Cir. 2003).

Memorandum Decision, Dkt. 159 in criminal case.

A timely § 2255 motion was filed in November of 2010. In 2011, Mr. Moorer was appointed to represent Mr. Russell on the § 2255 motion. Mr. Moorer was granted numerous extensions of time to file a reply brief. Tragically, Mr. Moorer passed way and was unable to file the reply brief. The Court then appointed Mr. Benjamin to

represent Russell.

Defendant claims in his § 2255 motion that his trial counsel was ineffective for three reasons: 1) failing to inform him of the career offender guideline range of 360 months to life would be the sentencing range on Count 1 if he was convicted at trial; 2) failing to adequately discuss the advantages and disadvantages of the plea offers that resulted in Defendant rejecting Government's plea offer of a sentence a 236 month term of imprisonment; and 2) failing to file a motion to suppress Defendant's confession as being involuntary due to his withdrawal from Xanax.

## Ineffective Assistance of Counsel Standard of Review

A petitioner claiming ineffective assistance of counsel must allege specific facts which, if proved, would demonstrate that (1) counsel's actions were "outside the wide range of professionally competent assistance," *and* (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-690 (1984). Mere conclusory allegations do not prove that counsel was ineffective. *See Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989). A defendant fails to state a claim for ineffective assistance if he fails to allege facts sufficient to meet <u>either</u> the "performance" <u>or</u> "prejudice" standard, and the district court may summarily dismiss his claim.

The Supreme Court has recently held that the Sixth Amendment's right to effective assistance of counsel extends to the consideration of plea offers that are rejected. *Missouri v. Frye*, ___ U. S. ___, 132 S. Ct. 1399 (2012). The *Strickland* test applies in ineffective assistance of counsel claims regarding plea negotiation. *Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376 (2012).

In this case, the Court determined a hearing was necessary in order to evaluate the credibility of the witnesses who had filed affidavits as to whether the Defendant was advised of the plea offer and whether he was advised he was facing a minimum of 30 years if convicted on Count 1 due to his career offender status (which was based on Defendant's prior felony conviction for a crime of violence and a prior felony drug conviction). Additionally, the issue of whether a motion to suppress should have been filed by counsel was also addressed at the evidentiary hearing. Based on the Court's evaluation of the testimony at the evidentiary hearing and the complete record, the Court will address the claims of ineffective assistance of counsel.

**1. Failing to inform Defendant of the career offender guideline range of 360 months to life would be applicable if Defendant was convicted at trial and failing to discuss the plea offers with Defendant in light of the career offender status.**

These are actually two different claims but are intertwined so will be discussed together by the Court. Defendant claims his attorney failed to advise him that he was looking at a minimum of 30 years imprisonment due to the career offender enhancement if he went to trial and was found guilty. Defendant testified his attorney told him he was

looking at 10 to 15 years if he went to trial. Defendant claims that is why he did not accept the Government's alleged plea offer of 236 months or 20 years. Defendant claims had he known he was looking at 360 months to life if found guilty by the jury, he would have accepted the Government's offer.

It appears undisputed that Mr. Phelps communicated two plea offers to Mr. Russell. The first offer was made on Janizary 26, 2007 and Mr. Phelps' notes (Government Ex. 3) indicates a minimum of 20 years if he pleads guilty and it appears Mr. Russell would have to give up his California supplier. Mr. Phelps' notes indicate this offer was communicated to Mr. Russell on January 27, 2007 and that the offer was rejected.

The second plea offer was right before trial on or about October 16, 2007 and based on Mr. Phelps' notes (Government Ex. 6) the offer was a base offense level of 36. The offer was communicated by phone to Mr. Russell. Mr. Phelps notes indicate that Mr. Russell said no to the offer and that Mr. Russell wanted to "see if the jury is going to accept the claims of these people." Mr. Phelps testified this is the offer that put the sentencing range at about 236 months imprisonment.

What is disputed in this motion is if Mr. Russell understood that he faced a much longer sentence if convicted and whether his counsel adequately advised Mr. Russell regarding the plea offers, the strength and weaknesses of his case and recommended going to trial or accepting the plea. The Court must discuss the Sentencing Guidelines in effect at the time of this case in order to analyze and apply Defendant's ineffective assistance of counsel arguments.

The Court notes that the Presentence Investigation Report used the drug quantity determined by the jury (Dkt. 113) of approximately 7 kilograms (15.5 pounds) of methamphetamine which provided at the time a base offense level of 36 which was lower than the 17 to 36 pounds argued in closing by the Government. Trial Transcript, Dkt. 153. Under the Guidelines in effect at the time, 36 pounds of meth mixture would be 16 kilograms and under the Guidelines 15 to 45 kilograms of meth mixture provided for a base offense level of 38.[1]

In Defendant's § 2255 motion, Dkt. 1, p.4, he indicates he would have accepted the Government's offer of a 236 month sentence.  Defendant claims the Government's offer was a drug offense level 36 (5 to 15 kilograms of meth mixture) less 3 levels for acceptance of responsibility and a recommendation for the low end of the Guidelines. Presumably, Defendant is assuming no role enhancement and the total offense level would be 33 with career offender criminal history category of VI resulting in a sentencing range of 235-293.  Defendant states in his testimony he was not informed of the career offender enhancement to his criminal history so his current counsel argues

---

[1]The Probation Officer calculated the offense level under § 4B1.1 to be 32, not 37.  This appears to be an error by the probation officer.  Paragraph 31 of the Presentence Investigation Report refers to § 4B1.1(C), but that section is not applicable since Mr. Russell was not charged with a 924 offense. It appears the probation officer meant § 4B1.1(b) and then mistakenly used subsection (3) for a offense level of 32 (statutory sentence of 20 years or more). Then since the base offense level of 32 was less that the otherwise applicable base offense level determined by the jury's finding on drug quantity, the probation officer used the higher base offense level of 36 to calculate the Defendant's Guidelines sentencing range.

As pointed out by the Government, the probation officer should have used an offense level of 37 pursuant to § 4B1.1(b)(1) as life was the statutory maximum on Count 1.  This would have resulted in a base offense level higher than the jury determined and total offense level after the role in the offense enhancement of 41. The sentencing range for 41, IV was 360 to life, so the ultimate sentence of the defendant would not have been affected.

the plea offer was for total offense level of 33, criminal history of V = 210 to 262 in which case the "low end" offer of 236 does not seem to apply. Rather, this "offer" of a base offense level of 36 less 3 points for acceptance for a recommendation of 236 months imprisonment *only* makes sense if the proper criminal history category was discussed by former counsel.

Moreover, it is unclear to the Court if the "offer" only addressed the base offense level for the quantity of drugs and acceptance of responsibility or if also addressed any increase for Defendant's role in the offense. Defendant received a 4 point enhancement in the Presentence Investigation Report. Based on Defendant's history and statements during his interview, it is unlikely the Court could have ignored imposing some level of a role adjustment for Mr. Russell's admitted role in the conspiracy. With acceptance (-3) and a 4 point role adjustment, the total offense level would be 37 with a criminal history of VI provides for a sentencing range of 360 months to life. Which is what Mr. Phelps advised Mr. Russell faced if he went to trial.

The plea offer of 236 months appears to be an attempt to reduce the drug quantity Mr. Russell would be held accountable for well below what the government believed he actually possessed or distributed in order to avoid a trial and allow Mr. Russell to receive a 3 point reduction for acceptance of responsibility. If the Defendant was sentenced using the 90 pounds (approximately 41 kilograms) mentioned in Mr. Russell's jail phone calls, the base offense level at the time would have been 38 (for 15 kilograms or more of a mixture containing methamphetamine). Assuming a 4 point adjustment for role in the offense, minus 3 for acceptance and a criminal history of V,

Mr. Russell was looking at a sentence for a total offense level of 39 which provides for a sentencing range of 360 to life if he went to trial and was found guilty on Count 1.

Finally, the Defendant would have been advised had he entered a plea that the Court is not a party to the plea agreement and the sentence would be determined by the Court after reviewing the Presentence Investigation Report and considering the factors in 18 U.S.C. § 3553. The Court finds it is unreasonable to argue a 236 month sentence would have ever been imposed by the Court even if that was the plea offer.[2] The Court finds Mr. Russell understood the plea offer of 236 months and the possible penalty if he went to trial based on his criminal history was a minimum of 30 years. This analysis by Mr. Phelps was not ineffective assistance of counsel. Rather, the record establishes Mr. Russell made a choice to proceed to trial knowing his punishment could be higher if convicted by the jury. Regardless of what exactly the terms of the plea offers were, the Court finds after hearing the testimony of the witnesses, that Mr. Russell was informed of the possibility of a sentence of 30 years to life imprisonment and the plea offers of 236 or 20 years and still elected to proceed to trial.

The Court acknowledges that Mr. Russell's father, John Russell, testified Mr. Phelps never used the term "career offender" and never said his son could be facing 30 years to life. John Russell testified counsel estimated 8 to 10 years, but could not make a prediction. However, John Russell stated in his affidavit that he understood the

---

[2] Current defense counsel argues the Court would have imposed the low end of the Guidelines. This argument is speculative based on the fact it was Mr. Russell's second conviction possession with intent to distribute methamphetamine.

possible sentence to be 10 to 15 years. Further, John Russell admitted he was not aware of all the conversations between Mr. Phelps and his son.  In fact there is no evidence John Russell was present at the meetings or on the phone when the plea offers and discussions of likely outcomes at trial and possible sentences were discussed with Mr. Russell. There is no evidence to support that Mr. Phelps discussed either of these offers with John Russell.  Therefore, the weight the Court placed on this testimony is minimal as the understanding of John Russell is not controlling in determining what the Defendant was told regarding the plea offers.

Mr. Russell testified he was advised of a plea offer of 20 years but that his attorney advised him it was a weak case and he should proceed to trial as the amount of drugs alleged by the government could not be proved and much of the discovery was based on hearsay and weak paperwork.  Mr. Russell claims Mr. Phelps told him in the presence of another attorney from Mr. Phelps' law firm, Mr. Peter Jones, he was looking at 10 to 15 years imprisonment.

During phone calls with his counsel from jail regarding the second plea offer, Mr. Russell claims his attorney did not use 30 years to life or the career offender term. Mr Russell testified he had no knowledge of the "career offender" term at trial.  Mr. Russell testified he did not understand the government needed to prove only 50 grams of drugs for the career offender criminal history and base offense level of 37 to apply.

Mr. Phelps testified he discussed the possible penalties a number of times with Mr. Russell and on two occasions Mr. Jones (another attorney in his office) was also present.  Mr. Phelps testified he advised Mr. Russell he was looking at 30 years or more

if convicted. Mr. Phelps confirmed there were two plea offers – early on and just prior to trial. Mr. Phelps testified he advised Mr. Russell the government had a strong case based on his statements during the video interview. Mr. Phelps testified Mr. Russell told him he did not think a number of the witnesses would actually appear to testify against him and he was not going to accept plea. Mr. Russell did not like the quantity of drugs the government wanted to say he was responsible for possessing. Mr. Phelps testified Mr. Russell's position about wanting to go to trial was consistent throughout his representation.

Mr. Phelps testified the first offer was for a recommendation of 20 years if Mr. Russell gave up his California supplier. Mr. Phelps testified the second plea offer was for a base drug offense of 36 based on 5 to 15 kilograms of drugs (instead of the 90 plus pounds the government alleged he had distributed), this was communicated to Mr. Russell and he was advised what he could expect the Guidelines sentencing range to be based on his criminal history [235 - 293]. Mr. Phelps admits he may not have used the term "career offender" in discussions with Mr. Russell but that he did inform Mr. Russell that his drug quantity and criminal history would determine the sentencing range. Mr. Phelps and Mr. Pulver testified Mr. Russell rejected all plea offers and indicated he wanted to go to trial.

Mr. Phelps testified Mr. Russell understood Count 2 related to a specific sale or controlled buy of 14 grams of a mixture containing methamphetamine, but knew the government was seeking to hold Mr. Russell responsible for over 500 grams of a mixture of methamphetamine in Count 1 and that would be enough to trigger a longer

sentence. Mr. Phelps testified he advised Mr. Russell to accept the plea offers as he would be looking at a higher sentence if convicted by the jury.

Mr. Phelps' testimony is corroborated by Mr. Russell's calls from jail to third parties. Mr. Russell's jail phone call to Kelli Carneiro was recorded and during the call on October 11, 2007, he stated he was looking at "30 years as a minimum." Government Ex. 8. On a second phone call on October 13, 2007 to Tara Thompson, Mr. Russell indicated the government was seeking to hold him responsible for 14 grams to 94 pounds and a minimum of 30 years. *Id.*

Mr. Russell testified the 30 years to life information did not come from his attorney, but another inmate. Even if this was true that an inmate told him he was looking at 30 years to life and his attorney had not told him of this possibility, one would expect Mr. Russell to immediately call his attorney and ask if he really was facing a 30 years to life sentence if he was found guilty at trial. This criminal case is not Mr. Russell's first experience with the Sentencing Guidelines and drug calculations.[3] Yet there is no testimony by Mr. Russell that he asked his attorney if he was really looking at 30 years if convicted.

Moreover, the second plea offer was discussed with Mr. Russell on October 16, 2007, which is *after* the taped phone calls when Mr. Russell told third parties he was looking at 30 years minimum. And Mr. Phelps notes indicate that Mr. Russell said no to the offer and that Mr. Russell wanted to "see if the jury is going to accept the claims of

---

[3] Mr. Russell had cooperated and pled guilty to possession with intent to distribute methamphetamine in 1992 and was sentenced to 54 months imprisonment in 1993.

these people." Mr. Phelps testified this is the offer that put the sentencing range at about 236 months imprisonment. The Court finds based on the factual record, Mr. Russell's claim of ineffective assistance of counsel simply do not add up even if an inmate instead of his counsel informed him of the maximum possible penalties. There can be no doubt, Mr. Russell understood he was facing 30 years imprisonment if convicted and instead decided to see if the jury was going to believe the witnesses testifying against him when he rejected the second plea offer.

Furthermore, the Court is not persuaded Mr. Russell did not know the maximum possible sentence was life as such was discussed at his arraignments. The maximums are reflected on the cover sheet filed by the Government with the Indictment (Dkt. 1-1 in criminal case). The Indictment cover sheet states a mandatory minimum of 10 years and up to life on Count 1. A superseding Indictment was filed in September of 2006 (Dkt. 24 in criminal case). The cover sheet for the Superseding Indictment indicates a mandatory minimum of 10 years to life on Count 1 and five years to 40 years on Count 2. A Second Superseding Indictment was filed on May 16, 2007 (Dkt. 45-2 in criminal case) indicating 10 years mandatory minimum and up to life imprisonment on Count 1 and imprisonment of not more than 20 years on Count 2. These cover sheets offer support for the fact Mr. Russell was told (independent of his own counsel) that maximum penalty he faced if convicted on Count 1 was life imprisonment.

The investigator, Mr. Ted Pulver, testified that Mr. Russell appeared proud of his video interview and was still hoping to cooperate which made it difficult to convince Mr. Russell he should take the plea deal. Mr. Pulver testified Mr. Russell was sure his

friends would not testify, so except for the confession it would all be based on hearsay. Mr. Pulver agreed the "career offender" term may not have been used in discussions with Mr. Russell, but was sure Mr. Russell had been advised 30 years to life was a possible sentence.

The Court is not overly concerned that Mr. Phelps may not have used the term "career offender" with Mr. Russell. Mr. Phelps indicated he discussed a sentence of 30 years to life based on Mr. Russell's criminal history. The career offender section of the Guidelines was to created to ensure certain "career" offenders receive a sentence of imprisonment "at or near the maximum term authorized." § 4B1.1 Background. There is no difference in the sentencing range in applying the § 4B1.1 and the quantity of drugs the government was alleging Defendant was involved with distributing in this case. In applying the career offender section of the Guidelines, the offense level of 37, IV (360 to life). In applying the base offense level of 38 (15 kilograms or more of a meth mixture) and a criminal history of V also results in a Guidelines range of 360 to life.[4] The Court finds counsel's explanation that Mr. Russell was looking at 30 years minimum if he lost at trial was an accurate interpretation of the Guidelines.

Based on the record, the Court finds Mr. Russell was advised and aware that he was facing a possible 30 years to life sentence based on his criminal history. The Court found Mr. Russell's testimony to be less credible than the detailed recollections of his

---

[4]The Court acknowledges these calculations do not take into account the impact of acceptance of responsibility if Mr. Russell pled or the likelihood of a role in the offense enhancement being applied by the Court.

former attorney and investigator. The Court also finds Mr. Russell admitted in two separate phone calls to third parties he was facing a minimum of 30 years to life. The testimony of former counsel and the investigator regarding Mr. Russell's belief his friends would not testify against him and the case on paper was weak since there were not large quantities of drugs the government could physically produce to the jury unfortunately did not turn out to be true. Mr. Russell's confidence about what the jury would do seems consistent with his confident and arrogant manner when trying to convince law enforcement to allow him to cooperate to reduce his potential punishment in the video interview. Mr. Russell appeared cocky about everything he knew and this attitude is consistent with the description counsel and the investigator testified to regarding Mr. Russell consistently saying no to plea offers and his belief his friends would not testify against him and he could win at trial. In fact, one witness Nquala John Bigman did not appear at trial to testify. (Dkt. 109 and Dkt. 119 in criminal case.)

Current counsel argues that Mr. Phelps should have advised Mr. Russell that if the Government proved 50 grams or more of methamphetamine he would have been facing an automatic base offense level of 37 and life imprisonment. The Court finds this argument is misplaced. In order for the offense level of 37 under § 4B1.1 to have applied, the Government would have had to prove beyond a reasonable doubt Mr. Russell was involved in a conspiracy to possess 500 or more grams of a mixture containing methamphetamine *or* 50 or more grams of "actual" methamphetamine. *See* 21 U.S.C. § 841(b)(1)(A)(viii) where "actual" methamphetamine is referred to as "methamphetamine, its salts, isomers, and salts of its isomers." The Indictment,

Superseding Indictment and Second Superseding Indictment all allege a methamphetamine mixture, not "actual" methamphetamine, so the Government had to prove Mr. Russell was involved in 500 or more grams of a meth mixture, not just 36 more grams of methamphetamine mixture when combined with the 14 grams of methamphetamine mixture in the controlled buy set out in Count 2.

 The trial transcript makes clear Mr. Phelps argued at closing the jury could find Mr. Russell guilty of Count 2, the controlled buy of 14 grams of a meth mixture, but should not find him guilty of Count 1 as the evidence linking him to the 17+ pounds the Government was alleging was not reliable. Obviously, the jury agreed in part with this argument as they did not find the Government had proven Mr. Russell was responsible for more than 15. 5 pounds of meth mixture when the Government argued the amount of methamphetamine mixture was much larger. While in hindsight this argument may appear to be ineffective, counsel was following his client's wishes of proceeding to trial and hoping his friends would not testify and the jury would not convict him if the Government could not actually produce 17+ pounds of meth mixture in the courtroom. Mr. Phelps argued Mr. Russell was a braggart but not a large scale drug dealer. The jury found otherwise, but this does not mean counsel was ineffective or the result would have been different if another attorney had handled this matter. It was Mr. Russell who decided to proceed to trial against his attorney's advice and in light of the possible 30 year sentence.

 The Court finds Mr. Russell was advised about the quantity of drugs the government intended to show he was involved with as Mr. Russell stated on phone calls

the government was seeking to hold him responsible for 14 grams on the controlled buy in Count 2 and over 90 pounds on Count 1. Mr. Phelps argued there was no hard evidence of the pounds of methamphetamine alleged by the government at trial and the jury should only convict on the quantity in the controlled buy. Current counsel finds this argument to have been unreasonable, but the Court does not find the strategy to be ineffective as a matter of law. Moreover, the Court does not find the 50 grams or more argument to be persuasive in this § 2255 motion. Under the statute and the Guidelines, the Court does not find Mr. Russell was looking at a base offense level of 37 if the government proved only 50 grams or more of a mixture containing methamphetamine – the government had to prove 500 or more grams of a mixture containing methamphetamine for the base offense level of 37 under career offender section of the Guidelines, § 4B1.1(b) to apply.

It is undisputed that counsel discussed both the strengths and the weaknesses of the government's case with Mr. Russell. Even if counsel indicated it was a weak case, the Court finds that Mr. Phelps as well as the investigator Mr. Pulver recommended Mr. Russell accept the plea offers and Mr. Russell consistently rejected this advice. This distinguishes the case from the facts in *Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376 (2012) where counsel advised his client to reject the plea offer based on a mistaken understanding of the law. Here, Mr. Phelps is an experienced criminal defense attorney who advised his client of both plea offers and recommended Mr. Russell accept the plea offers. Mr. Phelps provided correct legal analysis that based on Mr. Russell's criminal history he was looking at 30 years or more if convicted at trial.

Based on the entire record in this matter, the Court finds the claim of ineffective assistance of counsel for failing to advise of possible 30 years to life sentence or to adequately discuss the plea offers is unfounded and these claims are denied. Mr. Russell has failed to establish (1) Mr. Phelps' actions were "outside the wide range of professionally competent assistance," *and* (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-690 (1984). Simply put. Mr. Russell was not denied effective assistance of counsel guaranteed by the Sixth Amendment.

**2. Failing to file a motion to suppress Defendant's confession as being involuntary due to his withdrawal from Xanax.**

Defendant claims Mr. Phelps should have filed a motion to suppress his statements to law enforcement as he was under the influence of a withdrawal from his Xanax medication (an antidepressant and anti-anxiety agent) and Mr. Phelps should have raised the Xanax issue in a motion to suppress. Mr. Phelps and his investigator, Mr. Ted Pulver, both filed affidavits and testified that they discussed a possible motion to suppress with Russell and he stated he knew what he was doing during the interview with law enforcement officers and he was trying to get the FBI to agree to let him cooperate as a confidential informant. They maintain they asked Russell about the drug's impact on him during the interview and he said it did not impact him.

The Court acknowledges the testimony of Mr. Russell's parents that he could be confused and forgetful in the morning when his Xanax had worn off. It is undisputed Mr. Russell was arrested at his parent's residence early in the morning and had not taken his medication and the arresting officers refused to accept the medication from the parents. The Court also acknowledges Mr. Russell suffered a seizure approximately 24 hours after his arrest. But his parents had not viewed the interview of their son and therefore could not testify to signs of his withdrawal.

Mr. Loring Beals, a toxicologist, also testified as to the possible impacts of a person going through withdrawals from Xanax. Mr. Beals testimony was interesting, but he too did not view the Defendant's interview to determine if the typical symptoms were evident on the day Mr. Russell was interviewed.

Mr. Phelps testified at the evidentiary hearing that Mr. Russell maintained that his lack of Xanax medication did not affect his statements during the interview. Mr. Phelps also testified after the trial was concluded John Russell thought the Xanax could have affected his son's confession during interview and indicated to Mr. Phelps it could help his son if Mr. Phelps would say there was a Xanax problem. Mr. Phelps testified he told John Russell he could not lie.

The Court viewed the 1 hour 39 minute interview which began shortly after Mr. Russell was arrested. Mr. Russell did not appear to be confused or in any way suffering from withdrawals or negative symptoms from not having his Xanax during the interview. Mr. Russell was given both food and drink during the interview. Mr. Russell did not appear to eat the food but did drink the water. Mr. Russell did not appear

anxious although he did appear somewhat nervous. Mr. Russell's speech was not slurred and he did not appear to be just agreeing to whatever the officers asked. Instead he appeared to understand his waiver of rights, voluntarily signed the waiver and agreed to speak with the investigators. He admitted his involvement and was clearly trying to portray himself as the big fish in the pond and that he could offer lots of information on others and that he should be allowed to cooperate like he had negotiated in the past. This interview was not of a person who denied drug activities. This was the interview of a confident and coherent person trying to work with officers to reduce his jail time and negotiate his release from custody. Mr. Russell was specific about details in the information he provided and he did not appear to have any difficulty recalling facts.

    The Court finds at the time of the interview, Mr. Russell was not negatively impacted by not having taken his Xanax and Mr. Russell's statement to his counsel and the investigator that his conduct during the interview was not impacted by the lack of Xanax was consistent with what actually occurred the interview. While certainly it is possible on other occasions observed by his parents, Mr. Russell was impacted by not having dose of Xanax, the interview was not such an occasion. The Court finds the decision by Mr. Phelps not to file a motion to suppress based on the failure to take his Xanax medication or to present such evidence to the jury was not ineffective assistance of counsel.

    Mr. Russell has failed to establish (1) Mr. Phelps' actions regarding the Xanax claim were "outside the wide range of professionally competent assistance," *and* (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-690 (1984). For these reasons, this claim must also be denied.

# ORDER

**IT IS ORDERED:**

1. Defendant's § 2255 Motion (Dkt. 1 in Civil case and Dkt. 161 in Criminal Case) is **DENIED.**

Dated: **February 27, 2015**

Honorable Edward J. Lodge
United States District Judge